# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHAEL ELINSKY,

    *Plaintiff*,

*v.*                            CASE NO. 13-CV-11113

COMMISSIONER OF          DISTRICT JUDGE JULIAN ABELE COOK, JR.
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability and Disability Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 14.)

Plaintiff Michael Elinsky was 60 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 42.) Plaintiff's employment history includes work as delivery person for one year, an installer for four years, an inventory clerk for one year and a phone answering service person for less than one year. (Tr. at 175.) Plaintiff filed the instant claim on October 28, 2010, alleging that he became unable to work on December 31, 2004. (Tr. at 149.) The claim was denied at the initial administrative stages. (Tr. at 107.) In denying Plaintiff's claim, the Commissioner considered disorders of back (discogenic and degenerative) and other arthropathies as possible bases for disability. (*Id.*) On November 9, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Patrick MacLean, who considered the application for benefits *de novo*. (Tr. at 21-32, 33-96.) In a decision dated November 23, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 28-29.) Plaintiff requested a review of this decision on December 15, 2011. (Tr. at 17-20.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 13, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On March 13, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.       Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S.

521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*

4

*of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

###    D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2008, and that Plaintiff had not engaged in substantial gainful activity during the period from his amended alleged onset date of June 30, 2007, through his date last insured of June 30, 2008. (Tr. at 26.) At step two,

6

the ALJ found that Plaintiff's degenerative disk disease and lumbosacral sprain were "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 27.) At step four, the ALJ found that Plaintiff could perform his past relevant work as an inventory clerk (skilled light) and assembler production (unskilled light). (Tr. at 28.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 27-28.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 28-29.)

### E.   Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff sought treatment in the emergency room of Henry Ford Wyandotte Hospital from 2005 to 2011. (Tr. at 229-84, 420-30.) On April 13, 2005, it was noted that Plaintiff was depressed because he "was laid off from job in Nov '04 and has not been able to find work" and polysubstance abuse was diagnosed. (Tr. at 268, 272.) It was also noted that Plaintiff's posture, gait, motor activity, productivity, progression, language, perception, cognition and content were all normal. (Tr. at 273-74.) On September 15, 2006, Plaintiff sought treatment for chest pain. (Tr. at 248-66, 343-44.) On April 30, 2007, Plaintiff sought treatment because of "weakness." (Tr. at 240-42.) On July 23, 2010, Plaintiff sought treatment for "insomnia" and "acute alcohol intoxication"; after he stopped vomiting, he was prescribed Ambien and released. (Tr. at 231-33.)

Plaintiff also treated with M. Mong, M.D., and Nathan Bining, M.D., from 2003 to 2011, mainly for hypertension. (Tr. at 285-351, 366-98.) Dr. Bining's first treatment was on July 23, 2009. (Tr. at 291.) On July 26 and September 24, 2007, Plaintiff was seen for a follow up on his hypertension treatment and it was noted that Plaintiff "still has back pain with stiffness of the lower back" and that he "is still working as a delivery man lifting cases of pharmaceutical products." (Tr.

at 303, 304.) On November 14, 2007, Plaintiff sought treatment for back pain and stiffness and his medications were refilled. (Tr. at 302.) On September 16, 2008, Plaintiff sought treatment for low back pain with stiffness of the lower back and his prescriptions were refilled. (Tr. at 294.) On July 23, 2009, and October 8, 2009, Plaintiff sought treatment for fatigue and his medications were refilled. (Tr. at 290.) On December 16, 2009, and March 11, 2010, Plaintiff sought treatment for high blood pressure and his prescriptions were refilled. (Tr. at 288.) On July 9, 2010, Plaintiff sought treatment for lower extremity edema and Dr. Bining prescribed medication. (Tr. at 287.) On August 9, 2010, Plaintiff sought treatment for abdominal pain and his medications were refilled. (Tr. at 286.) On November 10, 2010, Plaintiff sought treatment for knee pain and Dr. Bining recommended aqua therapy and Motrin for pain control. (Tr. at 285.) On January 17, 2011, Plaintiff indicated that he slipped and fell at home, went to urgent care and was given a soft case, and that he was able to walk "without limping and is able to bear weight," but came in for medication refills. (Tr. at 368.) On March 11, 2011, Plaintiff sought treatment for "[r]ight big toe pain." (Tr. at 367.)

Dr. Bining completed a Physical Residual Functional Capacity ("RFC") Assessment on October 19, 2011. (Tr. at 438-42.) Dr. Bining concluded that Plaintiff was capable of low stress work, could walk two city blocks without rest or severe pain, could sit for thirty minutes at a time, could stand for fifteen minutes at a time, could sit for about two hours, and could stand for about two hours in an eight-hour workday. (Tr. at 439-40.) Dr. Bining also concluded that Plaintiff "must" walk every thirty minutes, "must" walk for fifteen minutes each time, and that he would need a job that permits shifting positions and at-will sitting, standing, or walking. (Tr. at 440.) Dr. Bining also stated that Plaintiff would need to take unscheduled breaks "every hour" but that his legs did not need to be elevated even with prolonged sitting. (*Id.*) Dr. Bining also found that

8

Plaintiff could occasionally lift less than ten pounds, could rarely lift ten pounds, and could never lift twenty pounds. (*Id.*) Dr. Bining also found Plaintiff could only rarely "look up" and could only occasionally look down, turn his head right or left, or hold his head in static position. (Tr. at 441.) The doctor also found that Plaintiff could only occasionally twist and could rarely stoop, crouch, or climb ladders or stairs. (*Id.*) Dr. Bining indicated that Plaintiff's impairments were not likely to produce good days and bad days, and he did not indicate that Plaintiff was likely to be absent from work as a result of the impairments or treatment. (*Id.*)

Plaintiff was also treated in 2011 at the Guidance Center for depression. (Tr. at 399-419.) It was noted that Plaintiff was "Unemployed – Looking for Work." (Tr. at 399.)

Dr. Spencer Ballard completed a Psychiatric Evaluation Form on August 12, 2011. (Tr. at 431-37.) Dr. Ballard did not indicate how often or how long he had treated Plaintiff. (Tr. at 432.) Dr. Ballard checked the lines on the form corresponding to marked or extreme difficulties in grooming, shopping, cooking, cleaning, establishing interpersonal relationships, holding a job, concentration, persistence, ability to complete tasks in a timely manner, ability to repeat sequences of actions to achieve goals, and ability to sustain tasks without an unreasonable number of breaks or without undue interruption. (Tr. at 434-35.) Under the question asking whether Dr. Ballard has performed any mental status examinations or psychological tests of intelligence or memory, the answer space was left blank. (Tr. at 435.) Dr. Ballard answered "no" to questions whether Plaintiff had a documented history of a chronic affective disorder and whether he had experienced or would be predicted to have episodes of decompensation. (Tr. at 436.) Dr. Ballard indicated that Plaintiff did not take medication with significant side effects. (Tr. at 437.) Dr. Ballard concluded that the description of Plaintiff's "symptoms and limitations apply continuously from June 30, 2008, and before to present." (*Id.*)

Plaintiff indicated in his daily activity report that he is able to "ride a bike for a while" on a daily basis, takes care of his own personal needs, does not need reminders, prepares meals, dusts, vacuums, does laundry, goes out at least once a day, drives, goes shopping, attends church but cannot kneel, builds model cars, is able to handle his own finances, and is able to "build and work on slot cars even though I can't stand too long to drive them." (Tr. at 193-96.)

Plaintiff testified that he lives by himself, cooks for himself, does his own cleaning although "it's hard" to "bend over and pick things up off the floor[,]" does his own laundry in the basement of his house, shops at small markets approximately threes times per week, and is able to drive "a short distance," but "can't sit for probably more than 15 minutes." (Tr. at 45-50.) Plaintiff indicated that he can lift and carry ten pounds and sit for about fifteen minutes at a time, but can only stand for five minutes at a time and can walk only one block (or five minutes) before he needs a break. (Tr. at 58-60.) Plaintiff stated that he is most comfortable in his "La-Z boy, and I'll elevate my feet, and I spend most of the time in that." (Tr. at 60.) Plaintiff testified that he is five feet and one inch tall and weighs 236 pounds. (*Id.*) Even with medication, Plaintiff stated that his pain is a nine out of ten and that his right "bad knee" has "given out on [him] a few times." (Tr. at 61-62.) Plaintiff considers himself "fairly likeable" and stays in touch with neighbors, but has depression, although he has never been hospitalized for depression. (Tr. at 65-66.)

The vocational expert ("VE") testified that Plaintiff's past work as an inventory clerk is classified in the Dictionary of Occupational Titles ("DOT") at the light skilled level and that the assembler production work is classified at the light unskilled level. (Tr. at 79-80.)

**F.      Analysis and Conclusions**

**1.      Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to return to his past relevant work as an inventory clerk and an assembler production. (Tr. at 28.)

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. §§ 404.1560(b), 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. §§ 404.1520(f), 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 27-28.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ did not adequately explain his reasons for discounting Plaintiff's credibility (Doc. 11 at 8-9), failed to properly assess Plaintiff's obesity according to SSR 02-1p (*id*. at 9-11), failed to assess proper weight to Drs. Bining and Ballard's opinions (*id*. at 11-14), failed to properly evaluate Plaintiff's severe degenerative disc disease and lumbosacral sprain by "not doing a 'function by function' analysis pursuant to SSR 96-8p" (*id*. at

14-16), failed to comply with SSR 82-62 by not "fully developing and explaining his conclusions that Plaintiff could do his past relevant work" (*id*. at 16-17), improperly relied on the state agency consultant, Dr. Blum (*id*. at 17-18), failed to "evaluate all of the medical exhibits" as required by 20 C.F.R. § 404.1527(c) (*id*. at 18-19), and "violated SSR 96-8p by failing to consider the impact of all of claimant's impairments on his ability to work." (*Id*. at 19-20.)

As to the timing of the most relevant evidence, in order to be eligible for disability insurance benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i)(2)(c); 423(a), (c-d). "If a clamant is no longer insured for disability insurance benefits at the time [he] files [his] application, [he] is entitled to disability insurance benefits only if [he] was disabled before the date [he] was last insured." *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002). Therefore, the ALJ generally only considers evidence from the alleged disability onset date through the date last insured. *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Social Sec. Admin.,* 88 F. App'x 841, 845 (6th Cir. 2004). In order for evidence of the plaintiff's condition after the date last insured to be relevant to the disability decision, the evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003). If the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). In the instant case, that relevant time period is June 30, 2007, the alleged onset date, through the date last insured of June 30, 2008.

a.      **Credibility Analysis**

Plaintiff contends that the ALJ did not adequately explain his reasons for discounting Plaintiff's credibility. (Doc. 11 at 8-9.)

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y*

14

*of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)      [D]aily activities;

(ii)     The location, duration, frequency, and intensity of . . . pain;

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

15

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 27-28.) I suggest that substantial evidence supports the ALJ's findings. During and around the relevant time period, the evidence shows that Plaintiff generally sought treatment for issues other than back pain. On April 30, 2007, Plaintiff sought treatment in the emergency room because of "weakness." (Tr. at 240-42.) On July 26, and September 24, 2007, Plaintiff was seen for a follow-up on his hypertension treatment and it was noted that Plaintiff "still has back pain with stiffness of the lower back" and that he "is still working as a delivery man lifting cases of pharmaceutical products." (Tr. at 303-04.) On November 14, 2007, Plaintiff did seek treatment for back pain and stiffness and his medications were refilled. (Tr. at 302.) However, it was not until almost one year later, on September 16, 2008, that Plaintiff again complained of low back pain with stiffness of the lower back and his prescriptions were refilled. (Tr. at 294.) Even after the relevant time period, Plaintiff still sought treatment mainly for medical issues other than back pain, e.g., fatigue (Tr. at 290), high blood pressure (Tr. at 288), edema (Tr. at 287), and abdominal pain. (Tr. at 286.)  Moreover, before and after the relevant time period, Plaintiff was noted to have normal posture and gait (Tr. at 273-74), and even after he fell he was able to walk "without limping[.]" (Tr. at 368.)

In addition, even after the relevant time period, the evidence shows that Plaintiff was treated with prescription medication only and that minimal treatment was recommended, such as aqua therapy. (*Id.;* Tr. at 285.) Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

I further suggest that Plaintiff's own statements about his activities of daily living supports the ALJ's credibility and RFC findings. Plaintiff indicated in his daily activity report that he is able to "ride a bike for a while" on a daily basis, take care of his own personal needs, prepare meals,

dust, vacuum, do laundry, go out at least once a day, drive, go shopping, handle his own finances, build model cars, attend church (but not kneel), and "build and work on slot cars even though I can't stand too long to drive them." (Tr. at 193-96.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). I therefore suggest that the ALJ's credibility findings are adequately explained and supported by substantial evidence and provide no ground for reversal.

### b.    Medical Sources

### i.    Standards

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

17

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors

18

may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). But this error is not always dispositive and can be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (quoting *Wilson*, 378 F.3d at 547).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006). After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

### ii.   Analysis

Plaintiff contends that the ALJ failed to assess proper weight to Drs. Bining and Ballard's opinions (Doc. 11 at 11-14) and improperly relied on the state agency consultant, Dr. Blum. (*Id.* at 17-18.) Plaintiff also contends that the ALJ failed to "evaluate all of the medical exhibits" as required by 20 C.F.R. § 404.1527(c) in weighing the medical source opinions. (Doc. 11 at 18-19.)

I first note that any physician's conclusion that a patient is not able to work is an opinion on the ultimate issue of whether a claimant is disabled, which is reserved to the Commissioner and therefore is not entitled to any weight. 20 C.F.R. § 404.1527(d)(3). I also note that the ALJ properly analyzed and stated the reasons for his conclusions pursuant to the requirements of SSR 96-2p, 1996 WL 374188, at *5 (1996). I further suggest that the ALJ's reasoning is supported by substantial evidence.

Neither Dr. Bining nor Dr. Ballard examined Plaintiff during or significantly close to the relevant time period. Dr. Bining's first treatment of Plaintiff was on July 23, 2009, one year after the relevant time period. (Tr. at 291.) Before that date, Plaintiff was treated by Dr. Mong exclusively and the record lacks an opinion from Dr. Mong. Dr. Ballard did not examine Plaintiff until August 12, 2011, three years after the relevant time period. (Tr. at 431-37.)

Since neither Dr. Bining nor Dr. Ballard treated or examined Plaintiff until a significant amount of time had passed after the relevant time period, and there was no evidence of record to review regarding either Plaintiff's back problems or Plaintiff's psychological treatment during the relevant time period, it is not surprising that neither doctor offered any explanation for their conclusions. Under these circumstances, I suggest that Dr. Ballard's opinion is not entitled to any special significance. *See Masters,* 818 F. Supp. 2d at 1067; *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013) (where "questionnaire" was "created well after the date last insured," the regulations "do not require that such an opinion be given any special significance"); *Swartz v. Barnhart*, 188 F. App'x 361, 399 (6th Cir. 2006) (assessment completed well after date last insured and based on treatment dated after the date last insured "cannot be given significant weight regarding the period on or before the date last insured").

Furthermore, even if the opinions could be found to relate to the relevant time period, neither Dr. Ballard nor Dr. Bining provided any observations, test results or medical findings to support their conclusions. I suggest that in cases like this, the ALJ is free to discount the conclusions and committed no error in doing so here. *See Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (holding that ALJ properly discounted doctor's opinions on a check-off form which "did not cite clinical test results, observations, or other objective findings as a basis for determining [the plaintiff's] capabilities"); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the

ALJ properly discounted the treating physician's opinion that consisted of checklist forms which cited no medical evidence and provided little or no elaboration).

I therefore conclude that the ALJ's decisions regarding the weight to give the medical source opinions was supported by substantial evidence.

### c.    Other Arguments

Plaintiff argues that the ALJ failed to properly assess Plaintiff's obesity according to SSR 02-1p (Doc. 11 at 9-11), failed to properly evaluate Plaintiff's severe degenerative disc disease and lumbosacral sprain by "not doing a 'function by function' analysis pursuant to SSR 96-8p" (*id*. at 14-16), failed to comply with SSR 82-62 by not "fully developing and explaining his conclusions that Plaintiff could do his past relevant work" (*id*. at 16-17), and "violated SSR 96-8p by failing to consider the impact of all of claimant's impairments on his ability to work." (Doc. 11 at 19-20.)

As to obesity, SSR 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citation omitted). In this case, the ALJ expressly considered all of Plaintiff's impairments, severe and non-severe (Tr. at 27-28), and I therefore suggest that SSR 02-1p was satisfied.

As to functional analysis and consideration of all impairments under SSR 96-8p, an ALJ's RFC assessment complies with the regulation where the "ALJ fully specified [the claimant's] exertional and non-exertional abilities." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013.) Since the ALJ's RFC findings included exertional and non-exertional limitations that the ALJ had considered supported by the record (Tr. at 27), I suggest that the ALJ sufficiently complied with SSR 96-8p.

As to SSR 82-62, this regulation is satisfied when the ALJ makes findings that the Plaintiff's RFC meets or exceeds the requirements of the past relevant work. *Greene v. Comm'r of Soc. Sec.*, No.12-14434, 2013 WL 5676247, at *5 (E.D. Mich. Oct. 18, 2013). As noted earlier, the ALJ may use the help of a VE as the ALJ in the instant case did. *Wright-Hines, supra.*

I therefore suggest that these arguments do not undermine the ALJ's findings.

### 3.   Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: January 30, 2014                    United States Magistrate Judge


### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 30, 2014                    By____s/Patricia T. Morris_____
                                           Law Clerk to Magistrate Judge Binder